UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Huff and Callins

KARL CHRISTOPHER MITCHELL

v.      Record No. 0442-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JANUARY 24, 2023

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

(Alexander Raymond, on brief), for appellant. Appellant submitting
on brief.

(Jason S. Miyares, Attorney General; Lindsay M. Brooker, Assistant
Attorney General, on brief), for appellee.

Karl Christopher Mitchell appeals his conviction for grand larceny of a motor vehicle in

violation of Code § 18.2-95. He argues that the evidence failed to prove beyond a reasonable doubt

that he was the person responsible for the theft. We hold that the appeal is wholly without merit.[1]

Consequently, we affirm the decision of the trial court.

BACKGROUND[2]

On April 29, 2021, Zobaer Hashemi was working at a car dealership in Fredericksburg

when he saw a man outside looking at trucks. Eventually, the man entered the dealership office,

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] After examining the briefs and record in this case, the panel unanimously agrees that
because "the appeal is wholly without merit," oral argument is unnecessary. Therefore, we
dispense with oral argument in accordance with Code § 17.1-403(ii)(a) and Rule 5A:27(a).

[2] Under settled principles, we state the facts, and all reasonable inferences flowing from
those facts, in "the light most favorable" to the Commonwealth, the party prevailing below. *Taylor
v. Commonwealth*, 70 Va. App. 182, 185 (2019).

approached Hashemi's desk, and asked about a white 2016 Ford F-350 truck. The man was wearing a tan knit hat, black sunglasses, and a blue surgical mask. He had a large tattoo on the right side of his neck, and his trimmed beard was visible around the edges of his mask.

The man told Hashemi he planned to finance the truck purchase and would like to test drive it. Hashemi accompanied the man outside and started the engine. When Hashemi asked for identification, however, the man produced only a paper copy of a driver's license, claiming he had lost the license itself. Hashemi noticed that the individual depicted in the copy did not resemble the man and stressed that he could not allow the man to drive without a "real ID." Hashemi offered to drive the truck with the man as a passenger and returned to the building to retrieve a vehicle "tag."

The man immediately drove away in the truck, running over some bushes on the dealership lot as he left. Hashemi pursued the truck in his own car, but the man "was cutting [off] cars" and drove through "a couple of red traffic lights." Hashemi eventually lost sight of the truck and abandoned his pursuit. He called 911 and gave the police the truck's vehicle identification number (VIN). The dealership owner provided the police with security camera footage from the office and the dealership lot.

After reviewing the footage, Officer Wagner of the Fredericksburg Police Department noticed similarities in appearance between the perpetrator and a man who had robbed a Stafford bank two days before the truck theft. Wagner forwarded the footage to Detective James Wright of the Stafford County Sheriff's Office, who was investigating the bank robbery. He also supplied Wright with the stolen truck's VIN.

On May 14, 2021, Detective Wright and a Stafford County deputy sheriff apprehended the appellant and recovered the stolen truck. When the appellant was arrested, he "was . . . with [the truck]" and "another stolen piece of equipment that he was operating." A search of the truck produced a "beanie" cap of the same or similar color as the one worn by the man who stole the

truck. Moreover, when the appellant was arrested, he was wearing dark, "DC Brand" "[s]kate shoes" with orange accents, just like those worn by the perpetrator in the dealership footage. The appellant had a full beard and a large "letter[ed]" tattoo on the right side of his neck. Detective Wright testified that the appearance of the tattoo "was consistent with" the appearance of the tattoo on the truck thief's neck in the dealership footage.

On the day of the appellant's arrest, Detective Wright interviewed him. The interview was recorded. After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), the appellant acknowledged that he had been arrested because the police said he possessed a stolen truck.[3] He stated that he had recently begun working in "landscaping" and that, when he was arrested, he was with a day laborer whom he had picked up earlier that day to assist him with a landscaping project. Although the appellant initially denied stealing the truck, he eventually asked how the detective might help him if he had, in fact, stolen the truck and other equipment. Wright told the appellant that he could not make any promises but that the appellant's cooperation and honesty would be taken into consideration. The appellant interjected, "I did all that shit." When the detective asked him why, he answered, "You already know why," then added, "I stole that truck," and numerous other items he listed. The appellant explained that, when he robbed a bank two days before the truck theft, he was driving a burgundy truck but he had returned that truck to the dealer after his financing application was rejected.

At trial, the recording of the appellant's interview, as well as the dealership footage, was admitted into evidence. Hashemi testified and identified appellant as the individual who stole the white F-350 truck. At the conclusion of the Commonwealth's evidence, the appellant elected to address the trial court. He stated that "[t]he truck at issue" was part of a "ca[c]he" of property

---

[3] Portions of the interview were played at trial. Detective Wright testified that the recording was "an accurate representation" of his interview with the appellant.

"seized from [his] home and [his] person, in Stafford, on May 14th." He claimed that his admissions to Detective Wright that he used each of the stolen items "to operate a landscaping business" were "coerced." The appellant maintained that he was the victim of a "vindictive prosecution[]" and asked that the evidence "be stricken on that basis."

In closing argument, defense counsel asserted that the evidence failed to prove that the appellant was the criminal actor because the only VIN information had been provided by Detective Wright, as opposed to the owner of the truck, and because the thief's face and head were concealed beneath a mask, sunglasses, and "a hoodie." Counsel conceded that, like the criminal actor, the appellant had a neck tattoo, but he stressed that tattoos were "not that uncommon" and no evidence established when he was tattooed. Moreover, although the appellant admitted that he confessed to stealing "that truck," defense counsel emphasized that he never confessed to stealing a "particular vehicle" from "a Fredericksburg auto dealership." He conceded that the Commonwealth "might have a very good case in Stafford on possession of a stolen vehicle, but not that he actually stole the vehicle."

The trial court convicted the appellant of grand larceny of a motor vehicle based on "the credible evidence" before it. It sentenced him to ten years in prison, with seven years six months suspended. He was also ordered to pay restitution of $3,769.

ANALYSIS

The appellant contends that the evidence failed to prove beyond a reasonable doubt that he was the individual who stole the truck.

"When considering the sufficiency of the evidence, an appellate court views the evidence 'in the light most favorable to the Commonwealth, the prevailing party below.'" *Williams v. Commonwealth*, 71 Va. App. 462, 483 (2020) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). This standard requires the Court to "discard the evidence of the accused in conflict

with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

On appeal, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). The appellate court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Instead, we ask only 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Secret*, 296 Va. at 228).

In addition, determining witness credibility "is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). The trier of fact "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (*en banc*); *see Rollston v. Commonwealth*, 11 Va. App. 535, 547 (1991). Further, "in drawing inferences from the evidence, the fact finder may conclude regarding even a non-testifying defendant that his false statements establish that he has lied to conceal his guilt." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019). "When 'credibility issues [have been] resolved by the [trial court as trier of fact] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (first alteration in original) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)).

It is under this well-established standard of review that we consider the appellant's challenge to the sufficiency of the evidence supporting his convictions for receiving stolen property. He argues that the evidence that he was the thief was circumstantial and failed to exclude all reasonable hypotheses of his innocence.

A sufficiency inquiry "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Bagley*, 73 Va. App. at 26-27 (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence . . . ." *Finney v. Commonwealth*, 277 Va. 83, 89 (2009) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "Similarly, the appellate court's review of the record generally 'is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling.' Appellate review requires a 'totality-of-the-evidence analysis,' . . . rather than a 'fragmented assessment of the record.'" *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 334 (2021) (first quoting *Bolden v. Commonwealth*, 275 Va. 144, 147 (2008); and then quoting *Moseley*, 293 Va. at 464). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Pick v. Commonwealth*, 72 Va. App. 651, 668 (2021) (quoting *Finney*, 277 Va. at 89).

Requiring "that circumstantial evidence must exclude every reasonable [hypothesis] of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt" at trial. *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003). This "reasonable-hypothesis principle," however, "is not a discrete rule unto itself" and "'does not add to the burden of proof placed upon the Commonwealth in a criminal case.'" *Vasquez v. Commonwealth*, 291 Va. 232, 249-50 (2016) (quoting *Hudson*, 265 Va. at 513). It is true that

when a fact finder is presented with "two equally plausible interpretations of fact," it "cannot 'arbitrarily' choose . . . one that incriminates the defendant." *Id.* at 250. However, an arbitrary choice occurs "only when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one." *Id.*

The appellant asserts that "[t]he Commonwealth failed to disprove the very real possibility that someone else stole the vehicle and that sometime later [he] innocently came into the presence of [it]."[4] He maintains that he never confessed specifically to stealing the truck owned by the dealership and that no DNA evidence connected him to the theft. The appellant further contends that Hashemi's identification testimony was not credible because he admitted he had never seen the perpetrator previously and "his face was obscured by a mask, sunglass[es], a hat and hood."[5] Finally, he argues that no evidence established the tattoo on his neck was identical to the perpetrator's or indicated when the appellant received his neck tattoo. Despite the appellant's arguments, the evidence, viewed under the proper standard, proves that he stole the truck.

The appellant was in possession of the stolen truck when the police apprehended him two weeks after the theft. Other than a day laborer he had hired, he was the only person "with [the truck]" when he was arrested. In a criminal prosecution for larceny, once the Commonwealth establishes that a larceny occurred, "the unexplained possession of recently stolen goods permits an inference of larceny by the possessor." *Burton v. Commonwealth*, 58 Va. App. 274, 284

---

[4] To the extent the appellant suggests that the evidence failed to prove he possessed the stolen truck, he raises this claim for the first time on appeal. Therefore, we decline to consider that argument. *See* Rule 5A:18. He also does not invoke the good-cause or ends-of-justice exceptions to Rule 5A:18, and the Court will not apply the exceptions *sua sponte*. *Edwards v. Commonwealth,* 41 Va. App. 752, 761 (2003) (*en banc*), *cited with approval in Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017).

[5] The surveillance footage does not depict the thief wearing a hood.

(2011) (quoting *Winston v. Commonwealth*, 26 Va. App. 746, 757 (1998)). This inference, even if it "[s]tand[s] alone, . . . is sufficient to support a finding of guilt." *Id.*

In this case, the appellant not only failed to offer an innocent explanation for his possession of the truck, thereby supporting application of the inference, but also expressly admitted to Detective Wright, "I stole that truck." His admission was amply corroborated by other evidence. *See Allen v. Commonwealth*, 287 Va. 68, 74 (2014) (holding that only "*slight corroboration* of the confession is required to establish corpus delicti beyond a reasonable doubt" (quoting *Cherrix v. Commonwealth*, 257 Va. 292, 305 (1999) (emphasis added))). Hashemi positively identified the appellant as the thief at trial. Additionally, Detective Wright testified that the large tattoo on the right side of the appellant's neck "was consistent with" the one on the thief's neck. Finally, a hat resembling the hat worn by the thief was found in the truck, and the appellant's distinctive shoes resembled those worn by the truck thief in the dealership surveillance footage admitted into evidence, which showed bright orange soles.

Although the appellant contends that Hashemi's identification was not credible, the trial court was able to assess the credibility of that identification by comparing the appellant's appearance during his videorecorded interview, as well as in court, to that of the thief in the dealership video footage. We defer "to the trial court's interpretation of all of the evidence, including video evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). "As factfinder, a trial court views video and other evidence to determine [the facts] . . . ." *Id.* On appeal, we "view video evidence . . . for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did." *Id.* We conclude that the trial court, having viewed the video evidence, could rationally determine that the video footage corroborated Hashemi's identification testimony and the appellant's admission, based on the similarities in the clothing, build, race, facial hair, and tattoos of the appellant and the perpetrator. Viewed as a

- 8 -

whole, the appellant's corroborated admission, his failure to provide a lawful explanation for his possession of the stolen truck, and Hashemi's identification, were competent, credible, and sufficient to prove beyond a reasonable doubt that the appellant stole the truck.

CONCLUSION

For the reasons stated, the evidence was sufficient to support the appellant's conviction for grand larceny of a motor vehicle. Accordingly, the trial court's judgment is affirmed.[6]

*Affirmed.*

---

[6] The Commonwealth notes an inconsistency between the trial court's oral pronouncement of punishment and the sentence reflected in the final order. The inconsistency relates to the amount of the ten-year sentence that was suspended—seven years ten months (as indicated by the transcript of the sentencing hearing) or seven years six months (as reflected in the sentencing order). The final order, therefore, imposes four more months of active time. The Commonwealth asks this Court to "remand th[e] case for the limited purpose of correcting this inconsistency pursuant to Code § 8.01-428(B)," Virginia's clerical error statute. The "well-established law of this Commonwealth" is that "'trial courts speak only through their orders and . . . such orders are presumed to reflect accurately what transpired.'" *Rose v. Commonwealth*, 265 Va. 430, 435 n.2 (2003) (quoting *McMillion v. Dryvit Sys., Inc.*, 262 Va. 463, 469 (2001)). Although this presumption is rebuttable, it applies despite the existence of "a transcript that may be flawed by omissions." *Smith v. Commonwealth*, 32 Va. App. 766, 772 (2000) (quoting *Kern v. Commonwealth*, 2 Va. App. 84, 88 (1986)); *see Dir. of Dep't of Corr. v. Kozich*, 290 Va. 502, 511 (2015). As a result, construing conflicting language in a transcript as rebuttal evidence adequate to require a remand would negate the presumption of regularity of the written order as compared to the transcript in the first instance. Consequently, we decline the request for a remand for the "purpose of correcting th[e] inconsistency." Nonetheless, the parties and the trial court remain free to revisit the issue as permitted by Code § 8.01-428(B).